ALEX. WILLIAMS ET AL. v. INTERNATIONAL & GREAT NORTHERN
RAILROAD COMPANY.

Decided March 19, 1902; April 30, 1902.

**1.—Carrier of Passengers—Separate Coach Law—Whites in Negro Coach.**

Evidence in case of a negro crowded out of the coach provided for his race, which was partly occupied by whites, onto the car platform, where he was pushed from the train while in motion, held to require the giving of a requested instruction as to the duty of company to have removed the whites from the car.

**2.—Riding on Platform—Contributory Negligence.**

Whether it was contributory negligence under the facts considered, for a passenger to ride on the platform when there was no room in the car provided for his race, held a question of fact, not justifying a charge relieving him from such imputation as matter of law.

**3.—Overcrowded Train—Sections of Excursion Train.**

Under pleadings and evidence presenting that issue it was the duty of the court to submit the question whether the railway was negligent, when the first section of an excursion train became overcrowded, in failing to put the second section, not so crowded, in advance, and to refuse an instruction relieving it of this duty if it gave notice to passengers at the depot to wait for the second section, which notice plaintiff did not appear to have heard.

**4.—Excursion—Advertisement—Evidence.**

Where the conduct of a railway company in permitting its train to be overcrowded was in issue as an element of negligence, it was proper to prove its advertisement of excursions for that day as bearing on the number of passengers it should have anticipated and provided for.

**5.—Overcrowding Train—Notifying Passenger to Take Another.**

Giving notice to passengers to wait for the second section of an excursion, when the first was overcrowded, did not in law make a passenger boarding the first asume the risk from its crowded condition; he may not have heard the notice, or, hearing it, not have known there was room on the second for persons of his race; and the question of his negligence in boarding the first was one of fact.

**6.—Passenger—Carrier—Degrees of Negligence.**

A passenger is bound only to the use of ordinary care; a carrier to a high degree of care in furnishing seats to its passengers and protecting them from the danger from overcrowded cars; but the propriety of the expression of its duty as "the highest degree of care," is doubtful.

**7.—Evidence—Harmless Error.**

The rejection of evidence that plaintiff's ticket was for a first class passage was improper, but not reversible error where his rights in the matters at issue were the same whether it was first or second class.

**8.—Passenger Carrier—Mail Train.**

The fact that a passenger train carries the United States mail can not affect the obligation of the carrier in regard to its proper operation for the safety of passengers.

Error to Comal.    Tried below before Hon. L. W. Moore.

*F. J. Maier (N. A. Stedman,* of counsel), for plaintiff in error.

*S. R. Fisher,* for defendant in error.

FISHER, CHIEF JUSTICE.—This is an action for damages by the appellant against the railroad company on account of injuries sus-

tained by Alex. Williams, when a passenger on board of one of appel-. lant's trains, by falling therefrom while the same was in motion. Verdict and judgment were in favor of the railroad company.

The case made by the plaintiff's petition is to the effect that Alex. Williams, a negro, and on the 21st of April, 1900, at New Braunfels, Texas, purchased a first class ticket over defendant's road from that point to San Antonio and return. He boarded the train at New Braunfels to take passage to San Antonio, and at once sought the negro coach. There were no vacant seats in that coach. Most of the same were occupied by white men. The other coaches were crowded, and it is averred that plaintiff was not permitted, by virtue of the law, to enter therein, as he was a negro. He entered the negro coach and found standing room only; and while in the coach, and after the train had left New Braunfels more white men entered that coach, until there was no standing room; all of which, it is alleged, the defendant and its servants knew. By reason of the crowded condition of the car, the plaintiff was crowded therefrom onto the platform. At that time there were passengers on the platform, and others thereafter went upon the platform. When the train was running at full speed, and at the time that Alex. Williams was standing upon the platform holding fast to the car, and in as safe and comfortable position as he could get, without negligence upon his part, it is alleged that, the train going around a curve, owing to the movement thereof and the swaying of the car, some of the passengers on the platform were thrown against the plaintiff and he was overbalanced and thrown from the train. The petition then proceeds to minutely allege the result of the accident, and the manner in which the plaintiff was injured, and the damages and loss sustained. Then follow averments to the effect that the defendant carelessly and negligently failed and refused to provide sufficient cars and accommodation to haul in safety all of the passengers to whom the defendant had sold tickets and who were rightfully upon that train; that all the seats were full and the aisles were crowded, and that by reason of this condition many were compelled to stand upon the platforms, which platforms were open and without protection on the sides; and that the defendant wrongfully, negligently, and carelessly took passengers on the train after all the seats were occupied, and after standing room in the aisles was exhausted, and carelessly and negligently arranged and operated its different trains so as to overcrowd the train; and negligently and carelessly placed its fullest and most crowded trains in those places and positions where the largest number of people were waiting to board the train, and then carelessly and negligently still more crowded the same. That it wrongfully and negligently and in disregard of the law violated its duty in permitting white passengers to go into and occupy the negro coach, and thereby to crowd the plaintiff out onto the platform; and that the facts alleged were known to the defendant and its servants, and they took no steps to prevent the same.

The defendant pleaded the general denial, and also alleged that plaintiff was on the platform contrary to the rules of the company and was guilty of contributory negligence; that the defendant furnished two other special trains, which were amply sufficient to accommodate all; that one was only six minutes behind the train the plaintiff took and the other six minutes behind the second; that the defendant and its agents informed the plaintiff of this and requested him to go on to one of the other trains, but the plaintiff still recklessly and negligently crowded on to the first train, after the same was full.

Appellant's fifth assignment of error complains of the refusal of the court to give the following instructions: "It was the duty of the railroad company to provide separate coaches for the accommodation of white and negro passengers. Conductors on passenger trains provided with separate coaches have authority to refuse white passengers seats in negro coaches, and to refuse negro passengers seats in coaches for white people, and it is the duty of the railroad company to remove all white passengers from negro coaches, and to remove all negro passengers from the coaches for the whites. Therefore, if you believe from the evidence that the plaintiff Alex. Williams is a negro, that he entered the negro coach, that said negro coach would have had room for him if white people had not been in it, that white men went into said coach, occupied the seats and room, and thereby the said negro coach became so crowded that there was not room in it for the plaintiff, and that on this occasion the plaintiff Alex. Williams was crowded out on the platform of said negro coach, and that he fell from said platform, or was pushed or thrown from said platform by other passengers being thrown against him from the swaying of the cars, and was injured without contributory negligence on his part, you will find a verdict in favor of the plaintiff and assess the damages as explained in other portions of this charge."

Special instructions number 5 asked by plaintiff and refused by the court is as follows: "If the plaintiff Alex. Williams is a negro, he had no right to go into any coach, for the purpose of riding therein, which was intended for whites, whether there were seats or other room therein or not; but he only had a right to ride in coaches which were intended for negroes, and therefore you are instructed that it was not negligence on the part of said plaintiff to stand on the platform, if there was no room for him in the negro coaches, even if these was plenty of room for him in the coaches for white people."

The only charge given by the court upon this subject is in the following language: "It is the duty of said company to have separate coaches or compartments thereof for whites and negroes."

There is evidence in the record to the effect that the plaintiff purchased at New Braunfels on the day in question an excursion ticket from that point to San Antonio and return, and that he was a negro, and immediately upon boarding the train went into the coach used for

the purpose of transporting negro passengers in order to procure a seat; that the coach was crowded and all the seats were occupied, and that many were standing in the aisles, and after he entered the car, others came in and he was crowded out of the car onto the platform, and when there, holding on as best he could, by the movement of the train and the jostling of the crowd he was thrown to the ground while the train was rapidly moving, and sustained some of the injuries complained of. There is evidence tending to show that he was exercising proper care at the time of the accident. While the evidence of the conductor is to the effect that he does not recollect whether the negro coach contained white people or not, there is positive testimony, upon the part of the plaintiff and others, that there were white people in the negro coach, some of whom were occupying some of the seats. The plaintiff, and one of his companions who boarded the train with him, testifies that when the conductor took up their tickets they asked permission to change to one of the trains following, all of which was refused by the conductor; and the witness Horace Richardson testifies that they stated to the conductor as a reason for this request that the car was badly crowded and that they could not get seats, and that there was hardly standing room. Whereupon the conductor informed the plaintiff and Richardson to remain on that train. The conductor testified that he had the authority, when occasion required, to give a passenger a transfer authorizing him to ride on a train following the one in his control. There is also evidence to the effect that the conductor made no effort to get the white people out of the negro coach, and that the whites were occupying the same when the conductor passed through the coach taking up tickets.

In view of the averments upon this subject and the facts as stated, it was clearly the duty of the court to give the first of the instructions above set out. It substantially embraced the law upon this subject. Rev. Stats., arts. 4509, 4516; Wood v. Railway, 42 S. W. Rep., 349; Railway v. Williams, 50 S. W. Rep., 732. It is an imperative duty required by law, resting upon the railway companies, to furnish separate coaches or compartments in its cars for whites and blacks, and it is a violation of the law to permit the whites to occupy the coaches set apart for negroes; and the law makes it the duty of the conductor to prevent such occupancy and to remove whites when found in the negro coaches.

The inference from the facts is clear, that if the conductor in this instance had discharged his duty and removed from the negro coach the whites that were occupying it, room could have been found therein for the appellant and others of his race, and crowding and forcing him upon the platform, a place of danger, would have been obviated. The fact that he remained upon the platform under the circumstances as stated would not necessarily charge him with contributory negligence. Under the law he had no right to occupy the other coaches upon the train, which were assigned to whites; and when the circumstances were such that he found no room in the negro coach, he had the right to do

the best, in view of his comfort and safety, that the circumstances allowed.

In the Williams case, supra, it is held that a negro passenger under such circumstances as those detailed, was not guilty of contributory negligence in riding upon the platform. In fact, the case cited, upon many of the main features, is very similar to the one before us; but in view of the facts of this case, we can not say absolutely that the appellant was or was not guilty of contributory negligence in riding on the platform. Therefore the second special instruction as above set out was properly refused, because it contained a statement to the effect that the plaintiff was not guilty of contributory negligence in standing on the platform. Whether under the facts and circumstances he was guilty of contributory negligence or not was a question of fact for the jury; and doubtless upon another trial a charge upon this branch of the case will be so framed as to meet this view of the question.

The first instruction as above set out substantially embraced the law, and the court should have given it in charge to the jury. The petition averred that the defendant carelessly arranged and operated its different trains so as to overcrowd some of its trains, and negligently and carelessly placed its fullest and most crowded trains in those places and positions where the largest number of people were awaiting to board the train, and then carelessly and negligently still more crowded the same.

In view of these averments and evidence to the effect that the railroad company had advertised excursions upon that date to San Antonio, and that there was, following the train upon which plaintiff took passage, two other trains which were not so crowded, and upon which there was room for many of the passengers who crowded upon the first train, and that these trains were following close behind the one that was boarded by the plaintiff, the plaintiff offered to prove that the overcrowded train was kept ahead all the way to San Antonio, and stopped along the route where large crowds were waiting at stations to take passage; and that, by keeping the empty trains behind, passengers boarded the overcrowded train in front, when if the empty trains had been placed to the front there would have been room sufficient to have accommodated the crowd. And there are some facts in connection with this which tend to show that this could have been done with little inconvenience to the railway company.

The court declined to permit this issue to be submitted to and considered by the jury; but upon the contrary, by a request from the defendant, instructed the jury as follows: "If you believe from the evidence that when train No. 1 reached New Braunfels it was crowded, and that the defendant desired and gave notice of its desire to take no more passengers thereon, and if you further believe that said train was being followed by two trains a few minutes behind, in which there was ample room to accommodate persons at New Braunfels intending to take pas-

sage from that point to San Antonio or intermediate points, then you are instructed that the defendant rested under no duty or obligation to Alex. Williams, or other persons at New Braunfels intending to go from there to San Antonio or intermediate points, to side-track or lay out its train No. 1, to enable the trains following to take on and carry to San Antonio or intermediate points said Alex Williams or other intending passengers; and you are instructed to disregard and not consider any evidence to that effect, and that such a course could have been pursued by the defendant or its agents."

In this connection it is well also to state that the crowded condition of the train upon which the appellant took passage at New Braunfels was apparent when that train arrived at San Marcos, before it reached New Braunfels going south. A dispatch was sent from that point to the agent at New Braunfels to the effect to keep the crowd off of the train known as No. 1, and on which the plaintiff and other passengers at New Braunfels took passage. There was a large crowd gathered at the station at New Braunfels when the train arrived, many of whom immediately boarded that train, among whom was the plaintiff. The facts authorize the inference that the plaintiff did not hear the notice given of the crowded condition of the train, and that the trains following were not crowded and had room sufficient to accomodate the plaintiff and other passengers; and there is also evidence to the effect that no effort was made to prevent him from boarding the train. There is evidence to the effect that the station agent and the city marshal of New Braunfels and the conductor, in a general way, notified the crowd there present at the depot who were intending to go as passengers to San Antonio that that train was crowded and to board one of the trains following. There is evidence of the plaintiff and others to the effect that they did not hear any such statement.

It is contended by appellant that, in view of the crowded condition of the first train, the railway company should have put either one or both of its empty trains to the front, in order to accommodate the crowd that was awaiting transportation at New Braunfels and other points along the route to San Antonio; and that if this had been done, plaintiff could and doubtless would have boarded one of these trains, and thereby have procured a seat in one of the coaches assigned to his race, or that the crowded condition of the car in which he first entered would not have likely resulted, if the passengers awaiting transportation could have been afforded the opportunity first of entering the trains that were comparatively empty. The pleadings and the evidence upon this subject justified the submission of this issue. It was the duty of the railway company to use a high degree of care to furnish its passengers seats and safe transportation, and if this result could have been accomplished by placing trains to the front that were then convenient, in order to relieve the crowded condition of one of its trains or to prevent such train from becoming overcrowded, it was a question of fact to be submit-

ted to the jury whether or not their failure to resort to these means for the safety of the passengers, under the circumstances, was negligence. Therefore, we are of the opinion that the court should have submitted this issue to the jury, and erred in giving the charge complained of in appellant's third assignment of error.

The evidence which was sought to be admitted, as shown in the bill of exceptions under the fifth assignment of error, was admissible. The purpose of this testimony was to show that upon this special occasion the railroad had advertised two excursions, one to San Antonio and another excursion over its line of road. The object of this testimony was to establish the fact that the railway company, in the nature of things, should have expected and did expect that a large crowd would be assembled at the depot; and such being the case, the defendant was called upon to exercise such diligence and care in handling its trains as was calculated to accommodate the crowd that it was to be expected its advertisement of the excursions would call to its depots. Railway v. Fister, 63 S. W. Rep., 952.

The court in subdivision 6 of its charge instructed the jury as follows: "If you believe the defendant did furnish the necessary passenger coaches by running in sections different trains in close and convenient proximity, and the public was duly advertised of this fact, then the railway company in this particular performed its duty. If under such circumstances the first train in such section was overcrowded, and if said company had performed its duty in trying to prevent such overcrowding, and should the plaintiff knowing this overcrowded train take passage thereon with knowledge of the other incoming trains to convey passengers to his destination, then the plaintiff could not complain of this condition."

The only notice given to the crowd assembled at the depot that trains were following, and of the crowded condition of the train upon which the plaintiff took passage, was the public statement by the conductor, that time would affect him, and what effect might be attributed to the effect that this statement was not heard by all, and that the plaintiff did not know of this condition before he left New Braunfels. The plaintiff would not necessarily be charged with notice given at this time; nor can it be said that it would follow that he was guilty of contributory negligence or want of proper caution if he boarded the train under the circumstances shown by the testimony. Whether the notice given at that time would affect him, and what effect might be attributable to his conduct in getting upon the crowded train under the circumstances, were questions of fact to be passed upon by the jury, and it was error for the court to assume that the combination of facts presented in the charge quoted would affect the right of the plaintiff to recover. Whether the plaintiff had notice of the crowded condition of the train, and that other trains were following upon which there was room for people of his color, were all questions of fact to be passed upon by the jury. He may have known or he may have had reason to believe that there were

other trains following a short time behind the one that he boarded, but he may not have known of the empty condition of those trains, and that there was room thereon in the car assigned to people of his color.

This view also disposes of appellant's ninth and tenth assignments of error. The charge as complained of in these assignments should have been so framed as to have left the jury free to pass upon these issues, and should not have assumed, as a matter of law, that the facts as stated constituted contributory negligence or assumed risk.

The eleventh assignment of error complains of the general charge of the court and special charge number 3, requested by defendant on the definition of negligence. In that branch of the case that relates to contributory negligence, the plaintiff was only required to do what a person of ordinary prudence would have done under like circumstances; but when it comes to the duty and care to be exercised by the railway company, a different rule prevails. In the case of Parvin v. Railway, 54 Southwestern Reporter, 638; a high degree of care is required; and in Railway v. Williams, 50 Southwestern Reporter, 734, this degree of care is required in furnishing seats to passengers, and in protecting them from an overcrowded condition of its cars, in order that they may not be forced to ride in positions more exposed to danger.

The complaint made to the charge by the twelfth assignment of error will doubtless be corrected on another trial. It will be made plain upon the subject pointed out in the assignment.

What we have said in effect disposes of the thirteenth assignment of error. But however, to be explicit, we think it best for us to say that the objections urged to the charge are well taken, and the court in submitting this question again should so frame its charge as to leave all the issues of fact embraced therein to the determination of the jury.

The fourteenth assignment of error complains of the ruling of the court in refusing to give plaintiff's special instructions numbers 2 and 4. These instructions both use the expression "highest degree of care," and in effect request the court to instruct the jury that the railway company must exercise the highest degree of care in its conduct towards a passenger. Special instruction number 4 undertakes to define what is meant by the expression "the highest degree of care," and the definition there given of the care that should be exercised by the railway company is proper; but in view of the authorities in this State upon the subject, we are doubtful whether the expression "highest degree of care" should be used in a charge in instructing the jury what care should be exercised by railway companies. What the law exacts is a high degree of care, and we think the most approved charge upon that subject is that stated in Railway v. Williams, supra, and in other cases from the courts of this State (Railway v. Welch, 86 Texas, 204), where a similar charge has been approved. It is to the effect that it is the duty of a railroad company towards passengers to exercise that high degree of care and prudence that would be used by very cautious, prudent and competent

persons under like circumstances, in order to the safe transportation of the passenger to his destination.

We are of the opinion that in a case like this, where the railway company has advertised excursions and in the nature of things would expect a large crowd, and that more than usual provision should be made for the transportation of passengers, that they rest under the duty to exercise a high degree of care to furnish a sufficient number of cars, in one or more trains, if necessary, in order to transport the passengers, with a view to their comfort and safety, which they had the right to expect would avail themselves of the inducements offered by the excursion rates. Under the facts of this case it would have been proper for the court, when requested, to have given a charge presenting this phase of the case in accord with the definition given in this opinion of the degree of duty required of railway companies in transporting passengers, and furnishing cars and seats sufficient for their safety.

The point presented in the fifteenth assignment is not reversible error. There is no question but that the plaintiff was a passenger, and was entitled to transportation, whether his ticket was first class or second class; and there is no question but what he entered the coach that he was entitled to enter; but there would have been no error if the court had admitted the ticket in evidence, as set out in the bill of exceptions. But, however, upon another trial, if there is a controversy over the subject of the right of the plaintiff as a passenger upon the train, and as to whether he was a first or second class passenger, we would suggest that the evidence be admitted.

The court's definition of contributory negligence is in substantial compliance with the rule announced by the authorities upon that subject.

We have in effect disposed of the question raised in the seventeenth assignment of error, but to remove all doubt upon this subject, it is well enough to say that the objection to the charge is well taken. It was a question for the jury to determine whether or not the plaintiff was guilty of contributory negligence in entering the train. It was an invasion of their province for the court to say that giving notice of the crowded condition of the train would absolutely charge plaintiff with negligence in going upon it as a passenger. These were questions of fact for the jury.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### OPINION ON REHEARING.

Appellee on the first page of its motion for rehearing makes this statement:

"It is respectfully submitted that the findings of fact regarding the operation of the three trains which defendant ran on this occasion between New Braunfels and San Antonio do not conform to the facts

proven, and the same appears to be taken from appellant's brief, which misstates and entirely perverts said facts, as appears from the record in this case and from the pages of appellee's brief heretofore referred to. On the occasion of the accident of which appellant complains, defendant ran from New Braunfels to San Antonio three trains at intervals of about six minutes. The first train was a regular mail and passenger train which carried mail and passengers through from St. Louis. The two following trains were excursion trains, one originating at Hearne, the other at Taylor. From the language of the opinion of the court, it appears that the court has taken no notice of the fact that the first train was a regular mail and passenger train and that the second trains were excursion trains. It is not believed that the court is aware that this was the fact, for there is neither reason nor authority to support the proposition that the regular· mail and passenger train should be laid out to allow excursion trains to precede it."

We made no findings of fact, but stated what we understood to be the facts as stated by the record, and we gathered the facts from neither the briefs of the appellant nor of the appellee, but they were taken from the statement of facts found in the record. There is no statement in the brief of appellant that we find of a misleading character, nor do we find that he has perverted or misstated the facts. We fully understood at the time of the disposition of this case by the court that the train boarded by appellant as a passenger was a mail and passenger train. We did not mention this fact, because we did not deem it one of importance, and do not so now consider it.

We know of no rule of law that from the mere fact that a train carries the United States mail it can be so operated by the railway company as to relieve it of the responsibility, duty, and care it owes to its passengers. It is shown by the evidence that the mail train in question took on passengers who were traveling upon excursion tickets. Their stopping at stations and taking such passengers upon the trains can be regarded as an invitation to passengers traveling upon that class of tickets to board it. If in the exercise of the duty and obligation resting upon the railway company to those that had procured tickets, and were waiting at the depot as passengers, it should become necessary or proper to delay the mail train for a reasonable time, by side-tracking it and allowing other trains which were empty to receive passengers, we do not see why the railway company should be relieved of this duty, solely on the ground that the delayed train carried the United States mail. Whether the railroad rested under such a duty, and whether it should in the particular instance be performed, were questions of fact for the jury.

This is the only question that we desire to notice in the motion for rehearing.

*Motion overruled.*